UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BELINDA B.,[1]

      Plaintiff,

                                Case No. 2:21-cv-1130
      v.                         Magistrate Judge Norah McCann King

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Belinda B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I. PROCEDURAL HISTORY

On February 26, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since February 14, 2017. R. 161, 181, 334−37. The application was denied initially

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

and upon reconsideration. R. 185−89, 192−94. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 195−96. Administrative Law Judge ("ALJ") Seth Grossman held a hearing on April 23, 2020, at which Plaintiff, who was represented by counsel, testified, as did two medical experts. R. 93−147. The ALJ also held a supplemental hearing on July 7, 2020, at which Plaintiff, who was again represented by counsel, again testified, as did a medical expert and a vocational expert. R. 43−92. In a decision dated August 14, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 14, 2017, her alleged disability onset date, through the date of that decision. R. 13−34. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 25, 2020. R. 1−7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 2, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On June 3, 2021, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

　　　Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

5

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

6

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 33 years old on February 14, 2017, her alleged disability onset date. R. 32. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 16.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: new daily persistent headaches; cervical facet syndrome; fibromyalgia; obesity; status post laparoscopic sleeve gastrectomy; major depressive disorder; and anxiety disorder. *Id*. The ALJ also found that the following diagnosed impairments were not severe: Epstein-Barr virus; mitral valve insufficiency; and deviated septum, status post right nasal valve reconstruction. R. 18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18−21.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 21−32. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a sales clerk, paralegal, brokerage clerk, administrative assistant, and teacher. R. 32.

7

At step five, the ALJ found that a significant number of jobs—*e.g.,* jobs as a telephone information clerk, a document preparer, and a surveillance system monitor—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 32–33. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 14, 2017, her alleged disability onset date, through the date of the decision. R. 33.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On March 19, 2020, Cynthia Raines, Ph.D., Plaintiff's treating licensed psychotherapist, completed a five-page, check-the-box, and fill-in-the-blank form entitled, "Psychiatric / Psychological Impairment Questionnaire." R. 2063–67. Dr. Raines first treated Plaintiff on May 1, 2017, and treated her on an as-needed basis, and most recently on January 11, 2020. R. 2063. Dr. Raines diagnosed generalized anxiety disorder, noting that Plaintiff "presented with persistent anxiety and stress related to multiple stressors." *Id*. Dr. Raines identified Plaintiff's psychosocial factors as her health (persistent chronic headaches), relationships, and employment, and noted that Plaintiff has not required hospitalization or inpatient treatment for her symptoms. *Id*. Asked to identify the signs and symptoms that support her diagnoses and assessment, Dr.

Raines checked the following boxes: depressed mood; persistent or generalized anxiety; feelings of guilt or worthlessness; irritability; psychomotor abnormalities (agitation); social withdrawal or isolation; and other sleep disturbances (insomnia). R. 2064. Of these signs and symptoms, Dr. Raines identified Plaintiff's anxiety, worry, and sadness (loss of health, financial independence, control of body) as the most frequent and/or severe. R. 2065. Asked whether Plaintiff's psychiatric condition(s) exacerbate pain or any other physical symptoms, Dr. Raines responded as follows: "Perhaps. It seems that her chronic pain preceeds [sic] her mood disturbance. It is most likely now occurring bi-directionally." *Id*. Dr. Raines denied that Plaintiff experienced episodes of decompensation or deterioration in a work or work-like setting that cause her to withdraw from the situation and/or experience an exacerbation of symptoms. *Id*. Plaintiff had good days and bad days "[a]s it relates to both pain and mental health symptoms." *Id*. Dr. Raines then estimated Plaintiff's ability to perform mental activities in a competitive environment on a sustained and ongoing basis (8 hours per day, 5 days per week), using the following scale: None (symptoms do not interfere with ability); mild (symptoms rarely interfere with ability); moderate (symptoms occasionally interfere with ability, with "occasional" defined as up to one-third of an eight-hour work day); moderate-to-marked (symptoms frequently interfere with ability, with "frequent" defined as one-third to two-thirds of an eight-hour workday); and marked (symptoms constantly interfere with ability, with "constant" defined as more than two-thirds of an eight-hour workday). R. 2066. According to Dr. Raines, Plaintiff had mostly none-to-mind limitations, but that Plaintiff had a moderate-to-marked limitation in her ability to perform activities within a schedule and consistently be punctual, and a moderate ability to maintain attention and concentration for extended periods, complete a workday without interruptions from psychological symptoms, and respond appropriately to workplace changes. *Id*. Dr. Raines went

9

on to state that Plaintiff had other work-related limitations, explaining that Plaintiff had "[d]ifficulty working for long periods without severe pain (head and body)." R. 2067. Dr. Raines opined that Plaintiff would likely be absent from work as a result of her impairments or treatment three or more times per month, explaining that Plaintiff's pain is severe and consistent. This then creates a cascade of sadness and anxiety as a result of loss and disconnection from rewarding activities." *Id*. It was Dr. Raines' medical opinion that Plaintiff's symptoms and related limitations as detailed in the questionnaire applied as far back as February 15, 2017. *Id*. Dr. Raines further indicated that Plaintiff's symptoms and functional limitations as detailed in the questionnaire were reasonably consistent with the clinical and/or objective findings discussed in the report. *Id*.

## V.   DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Raines's opinions. *Plaintiff's Brief*, ECF No. 19, pp. 43−44.  This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case

law."). Without this explanation, "the reviewing court cannot tell if significant probative

evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220

F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of

medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527

*with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer

or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)

or prior administrative medical finding(s), including those from [the claimant's] medical

sources"). Instead, the Commissioner will consider the following factors when considering all

medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant,

including the length of the treating examination, the frequency of examinations, and the purpose

of the treatment relationship; (4) the medical source's specialization; and (5) other factors,

including, but not limited to, "evidence showing a medical source has familiarity with the other

evidence in the claim or an understanding of our disability program's policies and evidentiary

requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and

Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior

administrative medical findings are supportability (paragraph (c)(1) of this section) and

consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability

factor, the regulations provide that "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

---

[4] As previously noted, Plaintiff's claim was filed on February 26, 2018.

or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency

factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior

administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of

medical opinions and prior administrative medical findings" and articulate in the "determination

or decision how persuasive [he] find[s] all of the medical opinions and all of the prior

administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

"Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency'

factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how

he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567,

2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2)).

At step four of the sequential evaluation process in this case, the ALJ found that Plaintiff

had the RFC to perform a limited range of sedentary work as follows:

> After careful consideration of the entire record, the undersigned finds that
> the claimant has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) except the claimant can perform simple tasks. The
> claimant can perform work that does not require exposure to dangerous heights or
> equipment.

R. 21. In reaching this determination, the ALJ considered, *inter alia*, Dr. Raines' opinions as

follows:

> Cynthia Raines, Ph.D., provided an assessment on March 19, 2020 (Exhibit 52F).
> Dr. Raines checked mostly none-to-mild mental limitations, except moderate-to-
> marked for performing within a schedule and consistently being punctual (Id. at 6).
> She noted moderate [limitations] for completing a workday without interruptions

from psychological symptom and responding appropriately to workplace changes. She was expected to be absent more than three days/month, which cascades into sadness and anxiety (Id. at 7). This assessment considered the claimant's concentration issues, and was generally consistent with regard to the claimant's other mental health areas of functioning. However, I do not find that the claimant could not keep a regular schedule nor do I find that she cannot be punctual. To the extent that Dr. Raines's opinion precludes the claimant performing a simple task job, I simply disagree.

R. 30.

Plaintiff argues that the ALJ's analysis of Dr. Raines' opinions is deficient under the applicable regulations because the ALJ summarily discounted these opinions without the consideration required by the applicable regulation. *Plaintiff's Brief*, ECF No. 19, pp. 43–44. Plaintiff specifically contends that the ALJ did not state or explain how persuasive he found Dr. Raines's treating opinions, but simply stated, "I disagree." *Id*. at 43. According to Plaintiff, Dr. Raines pointed to evidence to support her findings and her opinions are consistent with other treating opinions and other record evidence. *Id*. at 43–44 (citations omitted). Plaintiff argues that the ALJ's failure to adequately consider Dr. Raines's opinions was not harmless because his rejection of this treating provider's opinions resulted in a flawed RFC hypothetical question posed to the vocational expert. *Id*. at 49–50.

The Acting Commissioner counters that "the ALJ did not find that the supportability factor militated toward finding her opinions unpersuasive because the ALJ generally agreed with this opinion." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, p. 24. "The ALJ only disagreed with the notion that Plaintiff would be unable to perform work within a schedule and be regularly absent, and this finding turned on the consistency factor, as the ALJ found that [the] testimony [of medical expert, Dr. Steven Goldstein] here was more persuasive (Tr. 29)." *Id*.

The Court concludes that the ALJ failed to sufficiently explain his evaluation of Dr. Raines's opinions. First, it must be noted that the ALJ did not expressly consider the regulatory

13

factor of supportability when evaluating Dr. Raines's mental functional limitation opinions. It is true that a procedural error in failing to properly evaluate a treating provider's opinion might be harmless if a Court can "glean" how the ALJ considered the applicable factors and a "searching review" of the record confirms that the ALJ did not violate the applicable regulation. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (stating that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,]" but that "[d]espite the ALJ's procedural error, we could affirm if 'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed'") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)) (cleaned up). In the present case, however, the Acting Commissioner does not argue that Dr. Raines's opinions are not supported; instead, she takes the position that the ALJ found that Dr. Raines's opinions were supported and that this factor therefore did not render these opinions unpersuasive. *See Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, p. 24 ("[T]he ALJ did not find that the supportability factor militated toward finding her opinions unpersuasive because the ALJ generally agreed with this opinion.").

As to the consistency factor, the ALJ expressly stated that he found Dr. Raines's assessment of Plaintiff's concentration issues to be "generally consistent with regard to the claimant's other mental health areas of functioning." R. 30. However, the ALJ did not explain why he did "not find" that Plaintiff "could not keep a regular schedule" or "cannot be punctual;" he simply "disagree[d]" with Dr. Raines—without explanation—to the extent that psychotherapist's opinion would preclude Plaintiff from performing a job that involves only

simple tasks.[5] *Id*. Nor is it apparent to the Court from a review of the ALJ's decision why the ALJ also implicitly rejected Dr. Raines' opinions that Plaintiff was likely to be absent from work more than three times per month and was moderately limited in her ability to complete a workday without interruptions from psychological symptoms. There is no apparent accommodation for such limitations in the RFC and it is not clear to the Court why the ALJ rejected these opinions. R. 21, 30.

The Acting Commissioner appears to take the position that the ALJ sufficiently considered and explained the consistency factor when evaluating Dr. Raines's opinions because the ALJ found the hearing testimony of the medical expert, Dr. Steven Goldstein, to be "more persuasive." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, p. 24 (citing R. 29). The Court disagrees. As a preliminary matter, the ALJ did not refer to Dr. Goldstein when assessing the opinions of Dr. Raines, R. 30, nor does any discussion of Dr. Goldstein's testimony appear on the Acting Commissioner's cited page, R. 29. In any event, even reading the ALJ's decision as whole—including his discussion of Dr. Goldstein's hearing testimony—does not enable the Court to glean the ALJ's rationale in rejecting Dr. Raines's opined limitations. The ALJ's discussion in this regard simply focuses on his acceptance of Dr. Goldstein's finding that Plaintiff can perform simple task work:

> ***This claim lives or dies on whether or not the claimant's headaches are so severe that the claimant cannot do even a simple task job. Dr. Steven Goldstein, the impartial neurological medical expert, reviewed the medical records, listened to the claimant's testimony, and testified at the claimant's most recent hearing. Dr. Goldstein stated that most people are able to work despite experiencing headaches and that the treating records did not show that the claimant's headaches were of a nature and severity that would preclude simple task work.***

---

[5] Additionally confusing to the Court is the ALJ's suggestion that Dr. Raines's opinions would preclude Plaintiff from performing simple tasks: Dr. Raines expressly found, *inter alia*, that Plaintiff had none-to-mild limitations in her ability to understand, remember, and carry out one-to-two step instructions and make simple work-related decisions. R. 21, 2066.

**I credit Dr. Goldstein's testimony because he gave cogent and convincing reasons for his opinion.**

**I note that whether headaches are so severe that they would preclude all work is a difficult question not always readily ascertainable from medical records and testimony alone. It is precisely this type of case that impartial medical testimony is vital. Dr. Goldstein is a very experienced board certified neurologist. He testified that in his practice he treated many patients that had headaches, but that most patients could and did work despite the headaches.** *Dr. Goldstein stated that he reviewed the claimant's medical records and that the records do not reflect a severity that would preclude simple task work.*

**In light of the inherent difficulties of judging headache disability claims, I more heavily rely upon expert testimony for insight for these type claims than on other type claims. Ultimately, however, the decision is my own. Based upon Dr. Goldstein's testimony and the records as a whole, including the claimant's testimony, the medical records describing the headaches, and the consistently normal mental status examinations in the record, which provide at least some evidence as to the claimant's ability to concentrate despite her condition,** *I find that the weight of the evidence shows the claimant is capable of at least a simple task job.*

*I note that there are opinions in the record that are more limiting. I have discussed those opinions, supra.* **I have fully considered all the record opinions. My decision is based on the totality of the record evidence. I note further that the claimant's attorney objected to Dr. Goldstein's testimony. Contrary to the claimant's attorney's objection, Dr. Goldstein gave thorough and convincing testimony that demonstrated an excellent knowledge of the record.**

**Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the record as a whole which indicated restrictions, yet not to the degree alleged by the claimant.**

R. 31–32 (bold and underlining in original; italics emphasis added); *see also* R. 21 ("Dr.

Goldstein testified that most people are able to work despite experiencing headaches and that the

treating records did not show that the claimant's headaches were of a nature and severity that

would preclude simple task work.").[6] The ALJ's discussion in this regard is focused only on an

---

[6] The Court notes that the ALJ also concluded that Plaintiff's anxiety and depression "would not prevent simple task work" and "would not preclude work[,]" going on to state that he found that Plaintiff's "concentration, persistence and pace would be moderately limited. I next discuss the headaches [and Dr. Goldstein's testimony]." R. 31.

ability to perform simple tasks and is silent as to Dr. Raines's opined limitations, *i.e.*, being absent from work more than three times per month, moderate-to-marked limitation in the ability to perform activities within a schedule and be consistently punctual, and moderate limitations in, *inter alia*, the ability to complete a normal workday without interruptions from psychological symptoms. R. 31–32. The Court therefore is not persuaded that the ALJ's acceptance of Dr. Goldstein's opinion that Plaintiff could perform simple tasks sufficiently explains the ALJ's rejection of Dr. Raines's opined limitations discussed above.

"The new regulations promulgated by the Social Security Administration set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 FR 5844-01, and citing 20 C.F.R. §§ 404.1520c(b) and 416.920c(b)). As this Court's summary of the evidence makes clear, "the ALJ's failure in this case to meet these minimum levels of articulation frustrates this court's ability to determine whether [his] disability determination was supported by substantial evidence." *Id.*; *see also Brownsberger v. Kizakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *6–7 (M.D. Pa. Jan. 18, 2022) (finding that substantial evidence did not support the ALJ's assessment of medical opinions where the ALJ "makes no effort to compare or support their opinions with the record. . . . The ALJ does not provide any citations to specific evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors"); *cf. Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

17

Furthermore, the Court cannot conclude that the ALJ's failure to explain his evaluation of Dr. Raines's opinions is harmless. This is particularly so because the vocational expert agreed that being off task more than 10% of the time and being absent from work more than once per month is "problematical to holding" jobs. R. 85. *See also H.G. v. Comm'r of Soc. Sec.*, No. CV 20-7560, 2021 WL 3706724, at *5 (D.N.J. Aug. 20, 2021) (remanding where the RFC for medium work that limited the claimant to, *inter alia* "simple, routine tasks" and the ALJ "offered no reason for making an RFC determination that did not reflect" the limitations that Plaintiff had a "a moderate or more severe limitation to the ability . . . to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances").

For all these reasons, this Court concludes that remand of the matter for further consideration of the opinions of Cynthia Raines, Ph.D., and the RFC determination is appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived

at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[7]

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  November 14, 2022                          _____*s/Norah McCann King*_____
                                                          NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the opinions of Dr. Raines and the RFC, the Court does not consider those claims.

19